UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-172-GWU

DANIEL RAY DEAN,                PLAINTIFF,

VS.         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

09-172 Daniel Ray Dean

>    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-172  Daniel Ray Dean

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-172 Daniel Ray Dean

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Daniel Ray Dean, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a provisional learning disorder and polysubstance abuse (alcohol, Xanax, marijuana, and Oxycontin) in reported early remission. (Tr. 11). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Dean retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 15-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 20-year-old man with marginal literacy and no past relevant work experience, could perform any jobs if he: (1) were limited to work in which reading was not an essential job element; (2) was limited to simple, one- or two-step instructions in an object-focused work environment with occasional changes in work settings or routines; (3) could perform no highly stressful work, including any production rate or quota work; (4) could have occasional, casual contact with other persons; and (5) was moderately limited in his ability to understand, remember, and carry out

09-172 Daniel Ray Dean

detailed instructions, to maintain attention and concentration for extended periods, to complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, to interact with the public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. (Tr. 39-40). The VE responded that there were jobs that such a person could perform, and proceeded to give examples at the light, medium, and heavy exertional levels, and the numbers in which they existed in the state and national economies. (Tr. 40).

On appeal, this court must determine if the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to nervousness, poor concentration, and suicidal tendencies. (Tr. 94). At the hearing, he testified that his driver's license had been suspended for DUI several years previously, and about two years previously had been through a detoxification and rehabilitation program for a drug problem. (Tr. 24, 30-2). However, he stated that he was now staying away from friends who used drugs. (Tr. 30). He felt he was very anxious, but had never been diagnosed by a physician. (Tr. 26). He had tried to assist his father, who was a plumber, but would not concentrate and would go to sleep on the job. (Tr. 25). Educationally, Mr. Dean testified that he had gone to the sixth grade in regular

classes, but failed. (Tr. 24, 35). He stated that he could read and write "a little bit," but had been cheated at stores making change. (Tr. 24, 37). Currently, he mostly sat around and watched TV, and played video games. (Tr. 29-30).

The plaintiff's educational records do not appear to establish that he went to school beyond the second grade, although they could be incomplete. (Tr. 129).

Evidence from medical professionals begins with a discharge summary from the Baptist Regional Medical Center, showing that the plaintiff was admitted for five days in August, 2005 for drug use and threats to harm himself and others. (Tr. 131). His parents brought him to the hospital, saying that he had been using Oxycontin for a week and was hearing voices and seeing things. (Tr. 133). The psychotic symptoms cleared up after a day or two, and Mr. Dean was able to meet his treatment goals and be discharged early with a diagnosis of polysubstance abuse (marijuana, benzodiazepine, and amphetamines), and a substance-induced psychotic disorder. (Tr. 133). He had informed one of the physicians conducting an examination that he was in the twelfth grade at the time and making Bs and Cs in school. (Tr. 135). The physician felt that he was of average intelligence. (Tr. 136).

Subsequent emergency room records from Knox County Hospital reflect a variety of transient complaints, but include an October, 2005 visit for right upper quadrant pain after Mr. Dean consumed alcohol and became involved in a fight (Tr.

09-172  Daniel Ray Dean

155), and a visit for left shoulder pain after a fall in September, 2006, at which time a drug screen was positive for cannabis and benzodiazepines (Tr. 145).

Dr. Crystal Sahner conducted a consultative examination of the plaintiff in July, 2007.  At that time, Mr. Dean asserted that he had completed only fourth or fifth grade, averaging Ds and Fs.  (Tr. 166).  In addition to educational problems, he reported anxiety, and having problems with hallucinations when he went to sleep. (Tr. 167).  Both the plaintiff and his mother described his psychiatric admission in 2005 for hallucinations, but blamed it on having gone a long time without sleep, and apparently did not mention drug usage.  (Tr. 167-8).  He also had described having been in counseling at the Comprehensive Care Center (CCC) in 2005.  Dr. Sahner did not have any treatment records or academic records to review.  (Tr. 168).  The plaintiff admitted smoking and said that he had used alcohol "a little" in the past, but not currently.  (Tr. 168-9).  The plaintiff's father stated that his attempt to employ his son as an assistant in his plumbing business was unsuccessful because he would lose interest, could not concentrate, and was "not motivated."  (Tr. 167).  The plaintiff stated that he could take care of his personal needs and might take the garbage out once a week, but could not really perform household chores or shop. (Tr. 169).  He described sleeping all day, getting up at 10 p.m., and playing video games.  (Id.).

In Dr. Sahner's objective testing, Mr. Dean was able to spell the word "world" forward and backward, remember his grade school and his mother's maiden name, but could not subtract 3 from 20 and claimed not to know the direction in which the sun set. (Tr. 170-1). He was able to name three major cities, the capital of Kentucky, and the currency George Washington's picture is on, but seemed to have trouble with abstract reasoning. (Tr. 171). On the Rey 15-Item Test, Mr. Dean could recall only 6 out of 15 objects, with a score of 9 or more usually required to rule out malingering. (Tr. 172). Dr. Sahner indicated that the plaintiff did reproduce 9 items but 3 were repetitions, and she opined that the plaintiff did, in fact, put forth his best effort and his problems were really with attention, concentration, and comprehension rather than malingering. (Tr. 172). She stated that she suspected his intellectual functioning was within the borderline range but a formal evaluation would be required. (Tr. 171). Dr. Sahner diagnosed a mood disorder, a "suspected" learning disorder and a "suspected" attention deficit disorder. (Tr. 172). In terms of specific functional restrictions, she felt that Mr. Dean would have a "markedly" affected ability to understand, remember, and carry out simple, repetitive instructions and sustain attention and concentration to the performance of simple repetitive tasks, and an "extremely" affected ability to interact appropriately with fellow workers and supervisors and tolerate the stress and pressures of day-to-day employment. (Tr. 173).

09-172  Daniel Ray Dean

A state agency reviewing source, Dr. Lea Perritt, reviewed the evidence on July 23, 2007, stated that the plaintiff's alleged limitations appeared credible, and gave the opinion of Dr. Sahner great weight.  (Tr. 187).  She prepared a mental residual functional capacity assessment form, however, that was consistent with the ALJ's hypothetical question and did not contain any of the marked or extreme limitations cited by Dr. Sahner.  (Tr. 189-91).  A subsequent state agency reviewer, Dr. Jan Jacobson, opined that there was insufficient evidence to make a decision on the case, because the plaintiff had "no credibility."  (Tr. 205).  Dr. Jacobson noted the contradiction between the plaintiff's indication that he had not completed elementary school and his statement in 2005 that he was attending twelfth grade, and liked school and his friends.  (Id.).  She noted that his substance-induced psychotic disorder resolved when he was abstinent, and that he denied a history of psycho-substance abuse to Dr. Sahner.  (Id.).

The only other evidence is an initial visit to the CCC in April, 2008 with complaints of depression and anxiety, with the plaintiff denying any use of drugs and no use of alcohol for two months.  (Tr. 219).  He was currently feeling stressed because his father wanted him to move out of the house.  (Tr. 221).  It is not clear if the plaintiff returned for treatment.

The ALJ reasonably concluded that the contradictions in the plaintiff's stories along with his conduct and daily activities "simply annihilates his credibility."  (Tr.

15). He discounted Dr. Sahner's conclusions due to the failure of the plaintiff and his mother to provide honest information regarding substance abuse. (Tr. 16). He also criticized the psychologist's excuse for the plaintiff's poor performance on the Rey 15-Item Test. Nor did he accept that a person who could play video games for hours could have a marked limitation in his ability to concentrate. (Id.). In choosing between the two state agency reviewing reports, the ALJ gave the plaintiff the benefit of the doubt and accepted Dr. Perritt's restrictions. (Id.).

The plaintiff specifically objects to portions of the ALJ's reasoning in rejecting Dr. Sahner's report. Specifically, he felt that the ALJ should have given greater weight to the psychologist's conclusion that the plaintiff was not malingering on the Rey 15-Item Test and that the ALJ exaggerated the amount of time the plaintiff reported playing video games. While the plaintiff's testimony at the administrative hearing was that he played video games now and then and mostly watched TV (Tr. 29), he did appear to tell Dr. Sahner that after getting up at 10 p.m. he "stays up mostly playing video games" and would go to bed around noon the next day. (Tr. 169).

The ALJ provided an ample rationale for discounting the conclusions of Dr. Sahner, since there is ample evidence from other sources that the psychologist was not being given an accurate medical history to work with. Moreover, Dr. Sahner was not a treating source, but a one-time examiner. The Sixth Circuit has recognized

13

09-172  Daniel Ray Dean

that even the uncontradicted opinion of a one-time examiner can be discounted by an ALJ if there are good reasons provided.  Her v. Commissioner of Social Security, 203 F.3d 388, 390-1 (6th Cir. 1999).  In the present case, the ALJ could have followed the reasoning of the state agency reviewer Dr. Jan Jacobson and found that the plaintiff had not established any restrictions at all, but, as described earlier, chose to give Mr. Dean the benefit of the doubt.  Consequently, there was no error in the hypothetical question.

    The decision will be affirmed.

    This the 3rd day of February, 2010.

Signed By:

G. Wix Unthank

United States Senior Judge